IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 15-80003-CR-MIDDLEBROOKS/BRANNON

UNITED STATES,

vs.

JERMAINE DAWKINS,
   Defendant.
_____/

**OBJECTION TO PSR AND MOTION FOR DOWNARD VARIANCE**

COMES NOW, the defendant, Jermaine Dawkins, by and through the undersigned attorney, and files his objections to the PSR, and incorporated motion for a downward variance from the proposed sentence, and states as follows:

**OBJECTION TO THE PSR PROPOSED SENTENCE**

  **A. Role assessment**

Paragraph 112: The defendant objects to not receiving a mitigating role adjustment. Dawkins was a street level dealer, clearly at the low end of the ladder compared to the co-defendant's higher up in the conspiracy. Dawkins is entitled to a minimal role adjustment pursuant to §3B1.2.

This section describes a minimal participant as follows:

> *4. Minimal Participant.—Subsection (a) applies to a defendant described in Application Note 3(A) who plays a minimal role in concerted activity. It is intended to cover defendants who are*

- 1 -

> *plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant.* (Emphasis added).

Dawkins played a minimal role, and is plainly among the group of those least culpable in the criminal activity. Dawkins should receive a downward role adjustment.

### B. Offense level computation

Paragraphs 125, 127, 141: Dawkins objects to an offense calculation of level 31, because of his position that he is entitled to a not downward role adjustment. If provided a role adjustment for a minimal role, defendant would receive a reduction of 4 levels, placing his calculated guidelines range at 27. If provided a role adjustment of a minor role, the defendant would receive a reduction of 2 levels, placing his calculated guidelines range at 29. See, USSG Section 3B1.2.

### B. Chapter four enhancement and criminal history computation

Paragraphs 138, 151: While Dawkins concedes that he meets criteria as a

career offender, he respectfully objects to imposition of a sentence within this range, and addresses this issue in his incorporated motion for a downward variance.

### C. Sentencing options

Paragraph 184: Dawkins objects to the proposed sentencing option of 188 to 235 months, and addresses this in his incorporated motion for downward variance.

## Motion for downward variance

The defendant respectfully objects to the PSR proposed sentencing range of 188 to 235 (Paragraph 184), as being to harsh a sentence, and unreasonable. The sentencing guidelines are no merely "advisory", and sentencing court's are required to consider all of the factors listed in 18 U.S.C. Section 3553(a) in imposing Dawkins' sentence. United States v. Booker, 543 U.S. 220, 245-246 (2005). While this Court must calculate and consult the guideline range, that range does ***not*** generate a ***presumptively-reasonable*** sentence. The Eleventh Circuit has held that "a district court may determine, on a case-by-case basis, the weight to give the Guidelines, so long as that determination is made with reference to the remaining

- 3 -

section 3553(a) factors that the court must also consider in calculating the defendant's sentence." <u>United States v. Hunt</u>, 459 F.3d 1180, 1185 (11th Cir. 2006). The Court further held that "[w]hether, after consideration of section 3553(a) in its entirety, the court finds the Guidelines to be compelling is a fact-specific judgment that we neither mandate nor foreclose." <u>Id</u>.

Considering the factors set forth in 18 U.S.C. §3553(a), and the issues raised below, an incarcerative sentence of 5 years followed by a term of supervised release is a reasonable and appropriate sentence in this case.

That statute provides:

> The court shall impose a sentence ***sufficient, but not greater than necessary***, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> (1)   the nature of the circumstances of the offense and the history and characteristics of the defendant;
>
> (2)   the need for the sentence imposed –
>
>     (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>     (B)   to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant; and

   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

 (3) the kinds of sentences available;

 (4) the applicable category of offense committed by the applicable category of defendant as set forth in the Guidelines . . . .

 (5) any pertinent [Guidelines] policy statements . . . .

 (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

 (7) The need to provide restitution to any victims of the offense.

[Emphasis added.)

The primary directive under Section 3553(a) is that the court must impose a sentence that is "sufficient but not greater than necessary, to comply with comply with the purposes of sentencing. The defendant suggests that this court consider the following in support of his request:

1. <u>The defendant did not engage in violent behavior during the commission of the crimes charged</u>

- 5 -

A factor that this court should take into account that lessens the need for a lengthy prison sentence as proposed in Dawkins' guidelines range is that Dawkins' crimes did not involve violence or the threat of violence. While his crimes created a danger to those that used the heroin sold, there is no evidence that the defendant engaged in separate violent or threatening behavior during the course of the crimes committed. See, also, Johnson v. United States, -- S.Ct. --, 2015 WL 2473450 (2015), calling into question whether Dawkins possession of a firearm could even be considered a violent crime.

2. Additional effort at acceptance of responsibility and cooperation with the government

Another factor the court should consider in favor of varying below the proposed sentencing guidelines range is that Dawkins cooperated early and met with the government to be debriefed. His name was released early in the discovery process to the other defendants, including the lead defendants, that he was cooperating and would if necessary be a witness for the government. As noted in the PSI (paragraph 108), Dawkins was attacked by lead defendant Moore in retaliation for Dawkins cooperating against him in this case. Dawkins early cooperation, and the knowledge that he was cooperating

becoming known to the other charged, may have led to other defendants in this case not only pleading guilty, but agreeing to cooperate also with the government. For this additional acceptance of responsibility Dawkins should be considered for additional reductions from the proposed sentencing guidelines range. See, United States v. Leiberman, 971 F.2d 989 (3rd Cir. 1992); United States v. Garcia, 926 F.2d 125 (2nd Cir. 1991)

   3. Dawkins has a history of substance abuse which began as a juvenile

Although of his own doing, and at his own hands, it does appear that this defendant was a substance abuser from an early age. This early use of drugs effect both his thought process, and his moral compass, and played a role in his behavior in violating the law. While not an excuse, it is a piece of his background that the court should consider. See, U.S. v. Pickering, 178 F.3d 1168, 1172 (11th Cir. 1999) Penry v. Lynaugh, 492 U.S. 302, 319, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989)(evidence about the defendant's background is relevant because of the belief "long held by this society, that the defendants who commit criminal acts that are attributable to a disadvantaged background or to emotional or mental problems may be less culpable than defendants who have no such excuse.")

- 7 -

4. <u>Dawkins' risk of deportation to a country with which he has no ties</u>

As noted in the PSI (paragraph 162) contrary to the defendant's belief that he is a citizen, records show otherwise, and he will be subject to deportation upon completion of his sentence within BOP. The defendant has resided in the United States since the age of ten, and has fully assimilated into U.S. society. His entire family resides in the U.S, and he has no connection with his country of birth, Jamaica. Once deported, Dawkins will essentially be a stranger in a foreign country. He will also be precluded from entering the United States for a significant period of time, and will because of the distance and costs involved, be cut-off from having the regular in-person day to day contact with his family. This soon to be separation from his family, especially taking into account the defendant's young age, aggravated by a lengthy prison sentence, provide added punishment to any prison sentence the defendant will receive. The court should take this into account in determining length of sentence and the defendant's request for downward variance.

5. <u>Career offender status overstates Dawkins' criminal history and risk to re-offend</u>

Absent application of the Career Offender status to Dakwins, his criminal history category would be III, rather than VI. Application of the Career Offender to this defendant overstates his criminal history, his risk to reoffend. The court should take this into account in imposing a sentence below the proposed guidelines range. <u>Rita v. United States</u>, 551 U.S. 338, 351 (2007) (the court may sentence below the advisory Guidelines range either (a) because "the case at hand falls outside 'heartland' to which the [Sentencing] Commission intends individual guidelines to apply, U.S.S.G. §5K2.0," i.e., a downward departure, ***or (b) because "the Guidelines sentence itself fails properly to reflect the §3553(a) considerations," i.e., a variance.***) (emphasis added)

6. <u>Harshness of proposed sentence</u>

The sentence range proposed in the PSR is too harsh relative to the crimes Dawkins committed in this case. A sentence of 188 months, the low end, substantially over-represents the seriousness of his criminal history, the crime and conduct for which Dawkins has pleaded guilty, and the likelihood that he will commit other crimes, and falls well outside a reasonable and just sentence. <u>See</u>, <u>eg</u>., U.S.S.G, Section 4A1.3(b)(1); <u>United States v. Williams</u>, 435 F.3d 1350 (11th Cir. 2006)(90 months imprisonment was sufficient, but

not greater than necessary to punish, deter, and rehabilitate defendant where he was considered a career offender and low end of guidelines was 188 months)

   7. <u>Other</u>

Attached are letters of support for Dawkins, and more will be filed prior to the sentencing hearing. Additionally, witnesses will testify for Thomas at the sentencing hearing, in support of a variance from the proposed guidelines sentence.

## Conclusion

While this Court must calculate and consult the guideline range, that range does *not* generate a *presumptively-reasonable* sentence. *Considering the factors set forth in 18 U.S.C. §3553(a), a sentence in the range of 60 months, followed by supervised release, to include mandatory drug treatment, and counseling, is both a reasonable and appropriate one in this case.*

                Respectfully submitted,
/s/<u>Jack A. Fleischman</u>
   FLEISCHMAN & FLEISCHMAN, P.A.
   Jack A. Fleischman
   2161 Palm Beach Lakes Blvd.
   Suite 403
   West Palm Beach, Florida 33409
   Phone  561-585-3666

                Fax 561-471-8343
                FL Bar No: 0714534
                Email (CM\ECF): fflaw@yahoo.com

## Certificate of Service

I HEREBY CERTIFY that the following Objections to the PSR and motion for downward variance was served via CM\ECF this **8** day of **July**, 2015, to United States Attorney's Office, AUSA Adam McMichael, West Palm Beach, Florida, all counsel of record, and United States Probation Officer Frances Weisberg (frances_weisberg@flsp.uscourts.gov), and electronically filed with the Clerk of the Court.


                */s/ Jack A. Fleischman*
                Jack A. Fleischman


cc: Client

#711 P.002/008
07/03/2015 11:11
5614320057
From:THE UPS STORE 4369

Hello Mr. Fleischman,

Thank you for all your help with Jermaine. I know Jermaine's having a Sentencing coming up soon and I was hoping to have a conference with you before that day. Any way I know you're very busy but there are few things I want to let you know. Jermaine should not have an immigration issue, because that was established the last time. Under INA 320A law, he is a citizen of the U.SA. I don't know how the Sentencing will go, but I would like for you to asked for him to received 1 year in Prison with time serve and 2½ yrs probation. I do not know what the PSA report was, but could you please look up - INA 320 A when responding to her report. I know you are not immigration, but I just want you to have an idea about his status. Jermaine wants me to tell you he also have his GED and mind rose. what ever that mean. Please Mr Fleischman Take good care of him, he's all I got.

              mom Winsome

To whom it may concern:

    My name is Kamal Dawkins, and I am the older brother of Jermaine Dawkins. Jermaine and I grew up in New York City, and then moved to Florida in 2004 after he graduated high school. Jermaine is respectful and someone you can always count on.

    Lately, Jermaine has made some poor choices, both with his friends and his actions. I believe if given the opportunity, Jermaine Dawkins will be a great asset to himself as well as to his community, and I will be here to support him in whatever way I can.

Sincerely,

*Kamal Dawkins*

Kamal Dawkins

*Cynthia J Day*

CYNTHIA J DAY
Notary Public - State of Florida
My Comm. Expires Jul 9, 2016
Commission # EE 215118

7/1/15

To Whom this may concern,

My name is Shane Nugent. I have known Jermaine Dawkins for just about 14 years, from the time we attended high school in the Bronx, NY together. We both as teenagers volunteered at our local homeless shelters, offering necessary resources to help the needy. With his great work ethics, kindness, caring and giving attitude, I realized that Mr. Dawkins has potential into helping out his community into positive ways. The bad judgment decision Mr. Dawkins has made these previous months was a act of keeping bad company. If given the opportunity of being lenient on Mr. Dawkins sentencing, I know he would make a full 360, for his community, his family, and his own self.

Shane Nugent

1915 Sherwood Forest Blvd

West Palm Beach

Florida 33415

To whom it may concern,

My name is Joan Bennett, I'm a friend of Mr. Jermaine Dawkins and his family for over 30 years. Jermaine is kind, gentle, respectful and always willing to give a helping hand whenever possible. The death of his uncle Bishop Simon White causes Jermaine to exhibit some problematic behavior which he did not seek professional help for. Although I do not condone Jermaine behavior, I highly believe if given the opportunity he will be an asset to his community and family. I will also be a supportive system for Jermaine.

Yours Truly,

Joan Bennett

Sonia Mills

9873 Lawrence Road

Boynton Beach FL, 33436

7/1/2015

Your Honor:

I met Jermaine Dawkins through his mother around ten years. During this time I observed him to be a kind, caring, and loving person to his friends and family. Whenever anyone needs a helping hand, Jermaine is always the first person to volunteer. He is the kind of person that will put others above himself in many situation. He takes pride in helping others and being a good friend.

Jermaine is a loving son to this mother. I have seen him take care of her when she is sick when his friends are out partying and having fun. I have observed Jermaine giving advice to young men regarding pursuing an education, and making the proper choices in life. He wanted the same for himself also and have spoken to me about going back to school, and being gainfully employed so that he can make his mother proud of him. If given the opportunity, I believe that Jermaine will make the necessary changes to turn his life around and work towards this goal. Jermaine has made mistakes in the past, but I believe that he has a lot to offer to society. It is my hope that the court will give him another opportunity I will be here to guide and support Jermaine in is endeavor.

Sincerely,

Sonia Mills

Florence Blair

13309 Persimmon Blvd

Royal Palm Beach, FL 33411

June 30th, 2015


To Whom It May Concern,


In regards to Jermaine Dawkins. I am pleading for you to give him a second chance at life for him to the man society will be proud of. Jermaine has made mistake and choices which I am sure regrets.


I have known Jermaine's family including his mom for over thirty five years. We have become close friends and watch Jermaine grown into a kind, caring, and intelligent young man. I know that his recent choices have affected him as well as his well being. I have watched him become apologetic to all the people around him. I also know that if he were to get a chance he would change for the better. I do not condone Jermaine's recent mistakes but I am begging you to find it in your heart to give him the second chance. He has been through a lot of family tragedy which is not an excuse for his behaviour but if given a second chance I will be here to support him.


Your Honor, please find it in your heart to give him a second chance. Thank you.

Your Sincerely,

*[signature]*
Florence Blair

JENELLE M. SCHWARK
Notary Public - State of Florida
My Comm. Expires Aug 7, 2016
Commission # EE 223131

*[notary signature]*

6440 Forest Hill Blvd

West Palm Beach

Florida 33415

To Whom It May Concern,

      My name is Sheree Williams. I have lived in the same community with Mr. Jermaine Dawkins for over five years. In that time I have gotten to know him as an honorable young man and a very up standing person. Jermaine is always willing to give a helping hand whenever it is required. I truly believe if he is given the opportunity he could be a great individual with a lot to offer his community. Although I don't condone Jermaine's behavior, if given a chance he will turn his life around and I will be here to support him in any way I can.

Sincerely,

*Sheree Williams*

Sheree Williams

60880 Forest Hill Blvd

West Palm Beach

Florida 33415

To whom it may concern,

My name is Winsome Whyte and I'm the mother of Jermaine Dawkins. Jermaine is kind, loving, respectful, and is always willing to give a helping hand to whoever is in need. Since the death of his uncle Bishop Simon White, Jermaine personality has change and he started hanging out with the wrong type of friends. Bishop White was Jermaine pastor, and confidant. Although I do not condone Jermaine behavior I have seen where he is remorseful and taking responsibilities for his actions. I believe if given the opportunity with counseling Jermaine will be an asset to his family and his community. I will be here to support him in whatever ways I can.

*Winsome Whyte*

Winsome Whyte

Luis F. Osorio Betancourt
State of Florida
My Commission Expires 08/28/2018
Commission No. FF 155554

June 30, 2015

W300-890-64-726-0
Exp 6-26-19

*Luis F Osorio Betancourt*
*8/28/18*